**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| JDS 1455, INC. d/b/a WEST ON NORTH, and all others similarly situated | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-02546 |
| | ) | |
| v. | ) | |
| | ) | |
| SOCIETY INSURANCE, | ) | Honorable Judge Rebecca R. Pallmeyer |
| | ) | Honorable Magistrate Judge Beth W. Jantz |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOCIETY INSURANCE'S
MOTION TO DISMISS UNDER RULE 12(b)(6)
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

There is no insurance coverage under the Society Policy for Plaintiff's claim for loss of business income. Whether there is coverage under the Society Policy is a pure issue of law that should be decided by this Court by either dismissing the Complaint with prejudice for failure to state a claim under Rule 12(b)(6) or, in the alternative, on summary judgment pursuant to Rule 56, as the facts regarding the nature and cause of Plaintiff's loss are undisputed.[1]

Plaintiff seeks coverage under three of the additional coverage provisions found in the Businessowners Special Property Coverage Form of the Society Policy: Business Income, Extra Expense, and Civil Authority, all of which have specific terms and conditions that must be met before coverage is triggered. Plaintiff's losses do not fall within the terms and conditions for coverage under any of these additional coverage parts; therefore, Society is entitled to dismissal or summary judgment as to Counts I and II and a declaration that there is no insurance coverage under the Society Policy for Plaintiff's claims.

---

[1] Society adopts and incorporates its Motion to Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, For Summary Judgment and its Local Rule 56.1(a)(3) Statement of Undisputed Material Facts as though stated herein.

SOCIAL DISTANCING EXECUTIVE ORDERS ISSUED BY GOVERNOR PRITZKER.

Beginning in March, Illinois Governor J.B. Pritzker issued several executive orders (collectively, "the Executive Orders") that are relevant to this litigation.  Executive Order 2020-07 was issued on March 16, 2020 ("the March 16 Order") and states that "social distancing, which consists of maintain [sic] at least a six-foot distance between people, is the paramount strategy for minimizing the spread of COVID-19."  (Society's Stmt. of Undisputed Material Facts ("SOF") at ¶¶ 10-12.)  At the time of the Executive Orders, "the number of suspected COVID-19 cases in Illinois [was] increasing exponentially . . . indicating that drastic social distancing measures [were] needed."  (*Id.* at ¶ 12.)  Accordingly, businesses that provide food and beverages were no longer allowed to do so for on-premises consumption. (*Id.* at ¶ 13.)  However, such businesses were "permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as currently permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up.  In addition, customers may enter the premises to purchase food or beverages for carry out." (*Id.*)  The reason for the prohibition of on-premises consumption of food at restaurants, as specified in the March 16 Order, was to reduce the transmission of COVID-19 because public dining "usually involves prolonged close social contact contrary to recommended practice for social distancing."  (*Id.* at ¶ 14.)

Executive Order 2020-10 was issued on March 20, 2020 ("the March 20 Order").  (*Id.* at ¶ 15.)  The purpose of the March 20 Order was "for the preservation of public health and safety throughout the entire State of Illinois and to ensure that our healthcare delivery system is capable of serving those who are sick . . . [and] to slow and stop the spread of COVID-19."  (*Id.* at ¶ 17.)  It prohibited gatherings of more than ten people and required all businesses and operations in the state to cease, except for "Essential Businesses and Operations," which it "encouraged" to remain

open. (*Id.* at ¶¶ 16, 19.) "Essential Businesses and Operations" included "[r]estaurants and other facilities that prepare and serve food, but only for consumption off-premises." (*Id.* at ¶ 18.) Additionally, the March 20 Order allowed employees of Non-Essential Businesses to perform "Minimum Basic Operations" on their premises, including processing payroll and employee benefits, ensuring security of the premises, maintaining inventory, and preserving the condition of the premises. (*Id.* at ¶ 22.)

The March 20 Order further required Illinois residents to "shelter in place" but allowed citizens to leave their homes to perform Essential Activities, including obtaining and delivering food, and to operate Essential Businesses and Operations. (*Id.* at ¶ 21.) "Outdoor Activity," including running, walking, hiking, or biking, is an Essential Activity, as is shopping for "necessary supplies and services," including household consumer products. (*Id.* at ¶ 23.)

## THERE IS NO COVERAGE UNDER THE SOCIETY POLICY AS A MATTER OF LAW.

The only issue in this case is a question of law: whether the losses claimed by Plaintiff come within the terms and conditions of the insurance contracts between the parties. Under Illinois law, which applies to policies issued in Illinois to Illinois businesses, the construction of an insurance policy is a question of law, not fact, and is properly resolved by the court on a dispositive motion. *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.,* 139 F.3d 561, 565 (7th Cir.1998); *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1023-24 (7th Cir. 2013). The existence of coverage is an essential element of Plaintiff's case, and Plaintiff has the burden to establish its loss falls within the terms of the Society Policy. *Fiorentini v. Paul Revere Life Ins. Co.*, 893 F.3d 476, 480 (7th Cir. 2018).

The court must construe the policy as a whole "'taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that

is insured and the purposes of the entire contract.'" *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 778 (7th Cir. 2015). The policy must be read as a whole, "because it must be assumed that every provision was intended to serve a purpose." *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013) (citations omitted); *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433, 930 N.E.2d 999 (Ill. 2010). Insurance policies "must be construed and enforced as made by the parties; the courts have no right to make a new contract for the parties..." *Schewe v. Home Ins. Co.*, 80 Ill. App. 3d 829, 832, 400 N.E. 2d 501 (Ill. App. Ct. 1980). Clear and unambiguous policy terms and provisions must be taken in their plain, ordinary and popular sense. *State Auto Property and Cas. Ins. Co. v. Brumit Services, Inc.*, 877 F.3d 355, 357 (7th Cir. 2017); *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 292-93, 757 N.E.2d 481 (2001)).

I. **THERE IS NO COVERAGE UNDER THE BUSINESS INCOME OR EXTRA EXPENSE ADDITIONAL COVERAGES BECAUSE PLAINTIFF'S CLAIM WAS NOT THE RESULT OF "PHYSICAL" LOSS OR DAMAGE, NOR WAS IT CAUSED BY A COVERED CAUSE OF LOSS .**

A. **THE ACTUAL OR SUSPECTED PRESENCE OF THE CORONAVIRUS DOES NOT CAUSE A DIRECT "PHYSICAL" LOSS OR DAMAGE AND IS NOT A COVERED CAUSE OF LOSS.**

As Plaintiff admits, the Business Income and Extra Expense additional coverages of the Society Policy cover loss of business income and extra expenses sustained due to a suspension of the insured's operations only if that suspension is caused by a "direct physical loss of or damage to covered property at the described premises." (Compl at ¶¶ 28, 31 (emph. added).) Additionally, the Society Policy requires that the loss or damage be caused by a Covered Cause of Loss, i.e., a "direct physical loss." (SOF at ¶¶ 40-43.) Plaintiff does not present a claim for "direct physical loss of or damage to covered property at the described premises." Under the plain language of the Society Policy and Illinois law, the term "physical" in the phrases "direct physical loss of or damage to covered property" and "direct physical loss" clearly modifies "loss of or damage to"

4

and "loss." *Eljer Mfg., Inc.*, 197 Ill. 2d at 301*; see also, Ward Gen'l Ins. Servs., Inc. v. Employer's Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 489 (Cal. Ct. App. 2003) (finding the word "physical" modifies both loss and damage because "[m]ost readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears").

Under Illinois law, a property sustains a "physical" injury when it "is altered in appearance, shape, color or in other material dimension." *Eljer Mfg., Inc.*, 197 Ill. 2d at 301. Conversely, intangible loss or damage, such as diminution in value, is not a "physical" injury to property. *Id.* at 301-02. The Seventh Circuit has similarly found that the requirement of a "physical" loss is met where there is a change in the physical, as opposed to intangible, characteristics of the property. *Advance Cable Co. v. Cincinnati Ins. Co.*, 788 F.3d 743, 747 (7th Cir. 2015) (construing policy under Wisconsin law); *see also, Windridge of Naperville Condo v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1040 (7th Cir. 2019) (construing policy under Illinois law). As explained by a leading treatise on insurance law (*Couch on Insurance*): "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A *Couch On Insurance* § 148.46 (3d Ed. 2019).

The interpretation of "physical" in *Eljer Manufacturing* is consistent with the decisions of courts across the country that have interpreted the phrase "direct physical loss." *See, e.g.*, *Ward Gen. Ins. Servs.*, 114 Cal. App. 4th at 556 ("direct physical loss" requires loss of something that "has a material existence, formed out of tangible matter, and is perceptible to the sense of touch"); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569 (6th Cir. 2012) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did

not cause tangible damage to insured premises); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* No. Civ. 98–434–HU, 1999 WL 619100, at *7 (D.Or. Aug.4, 1999) (exposure of clothing to elevated spore counts was not "physical loss" in the absence of a "distinct and demonstrable physical change to the garment necessitating some remedial action"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E. 2d 1130, 1144 (Ohio Ct. App. 2008) (holding that mold does not constitute "physical damage" because "[t]he presence of surface mold did not alter or affect the structural integrity of the [property]").

Even if the virus that causes COVID-19 had been present on insured premises, it would not constitute a "direct physical loss of or damage to" covered property caused by a Covered Cause of Loss, as it does not cause a tangible change to the physical characteristics of property. The virus is not incorporated into the structure of the property, does not require the physical alteration of the building for removal, and does not render the building unfit for use. Rather, the coronavirus can be removed from surfaces with soap and water and rendered inert with various common household disinfectants, including bleach. (SOF at ¶¶ 7-9.) Plaintiffs' alleged losses are at most economic losses, not a direct <u>physical</u> loss or damage.

This case is more akin to *Universal Image* and *Mallestone*. In *Mallestone* the court held the policyholder failed to show a "physical loss to property" where mold had grown on the surface of the insured's exterior wood siding. 884 N.E. 2d at 1143-45. The court observed that the mold had merely grown on the surface of the wood, did not "attack" the wood itself, and could be removed through cleaning with basic household products, such as bleach. *Id.* The mold did not alter the siding itself, which would remain undamaged after cleaning, and was, therefore, not a physical loss. *Id*. at 1144-45. The fact that the mold would reoccur "in short order" and the siding would need regular cleaning did not transform the surface growth of mold into a physical loss. *Id.*

Similarly, in *Universal Image*, the Sixth Circuit affirmed a lower court ruling that Universal did not suffer any tangible, physical losses when it experienced a microbial contamination, including black mold capable of emitting spores, in the HVAC system of its leased premises. 475 Fed. Appx. at 570-73. The HVAC system had to be shut down for an extended period to perform cleaning. During this period, Universal's business "suffered severe disruptions," the poor ventilation caused temperatures to exceed 100 degrees, and Universal had to remove its operations from one of the floors it leased. *Id* at 570-71. As a result of the business disruption, Universal vacated the premises entirely. *Id.* at 570-71. Nonetheless, the court held there was no "direct physical loss or damage" because there was no tangible damage to property, and the temporary, "difficult" conditions caused by the microbial contamination did not render the building completely uninhabitable or unusable. *Id.* at 573-75. While Universal did have to clean personal property with household cleaners to remove any possible mold or bacteria contaminant, these were economic losses, and did not constitute physical loss or damage. *Id.* at 573 (citing *Columbiaknit*, 1999 WL 619100, at *6 for holding that clothing is not physically damaged if "mere washing" would alleviate alleged damage).

As in *Mallestone* and *Universal Image*, even if the virus that causes COVID-19 was present, there would be no "direct physical loss of or damage to covered property." The virus can be removed with basic household cleaning products, and it does not harm or alter the structure or physical characteristics of the walls, countertops, doorknobs or any other part of Plaintiff's property. Therefore, there has been no "direct physical loss of or damage to covered property at the described premises" and no "Covered Cause of Loss" within the meaning of the Society Policy. *Eljer Mfg., Inc.*, 197 Ill. 2d at 301-02.

Further, the virus has not rendered Plaintiff's <u>premises</u> unsafe, unusable, or uninhabitable. Rather, as is evidenced by the limitations imposed by Governor Pritzker's Executive Orders, it is <u>groups of people</u>, without adequate social distancing, that are unsafe regardless of location because of the risk of transmission. (SOF at ¶¶ 12, 14, 16, 20.) This distinction is demonstrated by the fact that under the March 16 Executive Order, restaurants and other facilities that serve food, including that owned by Plaintiff, are allowed, encouraged, and are continuing to operate on their premises for the purposes of selling food and beverages for off-premises consumption. (*Id.* at ¶¶ 13, 16-19.) In fact, Plaintiff's establishment is allowed, as an Essential Business under the Executive Orders, to sell food and alcohol for delivery and takeout and access its premises for purposes of maintaining the facility, inventory, payroll, and similar Minimum Basic Operations. (*Id.* at ¶ 18, 22.) Moreover, countless facilities throughout the country continue to operate even when the virus is known or suspected to be present, such as hospitals, medical clinics, grocery stores, dry cleaners, and hardware stores. Though the virus requires that precautions be taken in any space, it does not render premises uninhabitable or unusable and does not cause a direct physical loss of or damage to property. Consequently, Plaintiff has not suffered the type of harm covered by the Society Policy, nor has it suffered a harm resulting from a Covered Cause of Loss. Therefore, there is no coverage under the Society Policy as a matter of law and the Court should either dismiss Count I and II of Plaintiff's Complaint for failure to state a claim upon which relief can be granted or, in the alternative, grant summary judgment in Society's favor.

**B.** **THE PARTIAL TEMPORARY LIMITATION OF PLAINTIFF'S OPERATIONS IMPOSED BY GOVERNOR PRITZKER'S EXECUTIVE ORDERS IS NOT A "PHYSICAL" LOSS OR DAMAGE AS A MATTER OF LAW.**

The Executive Orders that temporarily limit the types of business operations Plaintiff can perform on its premises do not, as a matter of law, constitute a "physical" loss or damage. The

Executive Orders have resulted in a temporary, partial, and intangible limitation of business operations, similar to a change in zoning that alters the hours a business can be open or a temporary suspension of a liquor license, not an alteration in the physical characteristics of property.

The only court in Illinois to consider whether a limitation on use constitutes "physical" property damage rejected that proposition. In the context of a third-party liability policy, the court in *Mutlu v. State Farm Fire and Casualty* denied recovery where the insured sought coverage for the defense and indemnity of a lawsuit that alleged the insured deprived other condominium owners in his building of the use of hot water. 337 Ill. App. 3d 420, 423, 785 N.E. 2d 951 (Ill. App. Ct. 2003). The policy at issue insured against liability for property damage, defined as "physical damage to or destruction of tangible property, including loss of use." *Id.* at 426. The court found that under the Illinois Supreme Court's decision in *Eljer Manufacturing*, the loss of use of hot water did not constitute "physical" damage and thus held that there was no coverage for loss of use of tangible property unless physical damage or destruction was also shown. *Id.* at 431.

*Mutlu* is consistent with the opinions of sister courts considering first party property insurance policies. In *Roundabout Theatre Company v. Continental Casualty,* for example, the Appellate Division of the Supreme Court of New York held there was no "direct physical loss or damage" under an insurance policy where a plaintiff theater company lost all access to its premises due to a municipal order that closed the street the theater was located on. 302 A.D.2d 1 (N.Y. App. Div. 2002). The order was issued as a result of a construction accident on a nearby property, but the premises of the theater did not sustain any physical damage. *Id*. at 3. The street was closed for nearly a month "because of the substantial damage to the area and the danger from the partially collapsed scaffold." *Id*. As a result, the theater was completely inaccessible to the public and forced to cancel all performances. *Id*. The court rejected the plaintiff's argument that "loss" should

be read as including "loss of use" and held the policy unambiguously required direct physical damage to the theater itself for coverage. *Id*. at 7; *see also*, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (finding the words "direct" and "physical" require "actual, demonstrable harm of some form to the premises itself, <u>rather than forced closure of the premises for reasons exogenous to the premises themselves</u>") (emph. added); *Pentair v. Am. Guarantee and Liab. Ins.*, 400 F.3d 613, 615 (8th Cir. 2005) (loss of use and function of a factory during period it was without electricity was not a direct physical loss); *Source Food Tech. v. U.S. Fid. and Guaranty*, 465 F.3d 834, 835 (8th Cir. 2006) (loss of use, function, and access to beef product did not constitute a direct physical loss).

Courts have also found that reduced consumer demand resulting from a limitation on an insured's business operations at the insured premises due to a governmental order is not a "direct loss." *Brothers Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611 (D.C. 1970). In *Brothers*, the local government imposed a 5:30 p.m. curfew and prohibited the sale of alcoholic beverages in response to riots following the assassination of Martin Luther King, Jr. *Id.* at 611-12. The insured's policy covered "direct" losses to covered property from riot and civil commotion; however, the Court held that the policy did not provide coverage for the plaintiff's claims because the "business 'falloff'" resulting from the inability to conduct business on its premises after 5:30 p.m. was not a "direct" loss by a riot. *Id.* at 613. Rather, the court found that "[a]t the most, the loss incurred here was an indirect, if not remote loss resulting from riots." *Id.*

The Executive Orders have not altered the tangible, physical characteristics of the premises. They have caused nothing more than a temporary and partial limitation of allowable operations at Plaintiff's premises, which is, at most, an economic loss and not a physical loss

covered by the Society Policy.  *Eljer Mfg.,* 197 Ill. 2d at 301-02.  Therefore, as a matter of law there is no coverage under the Society Policy.

### C. THE PERIOD OF RESTORATION CLAUSE IS FURTHER EVIDENCE THAT "PHYSICAL" LOSS OR DAMAGE REQUIRES A TANGIBLE CHANGE IN THE PHYSICAL CHARACTERISTICS OF PROPERTY.

The fact that the Business Income Additional Coverage of the Society Policy only provides coverage for loss of business income that was sustained during the "period of restoration" further demonstrates the meaning of the requirement of "physical" loss or damage.  "Period of Restoration" begins with the "direct physical loss or damage" and ends on the earlier of "the date when the property at the described premises should be repaired, rebuilt or replaced" or "when business is resumed at a new permanent location." (SOF at ¶ 42.)

This Court is to construe the policy as a whole and give meaning to each provision.  *Eljer Mfg.,* 1997 Ill. 2d at 292.  The definition of "period of restoration" provides additional proof of the intended meaning of "physical loss of or damage to" as used in the Society Policy.  Read together, it is clear the phrase "physical loss of or damage to" does not encompass a substance, like a virus, that can be removed with household cleaning products or a temporary limitation on the use of a property.  Rather, it refers to a loss or damage that causes a physical alteration of the property that requires the property to be repaired, rebuilt, or replaced.  *See, e.g*., *Newman Myers*, 17 F. Supp. 3d at 332 (explaining use of "repair" and "replace" in period of restoration clause "contemplates physical damage to insured premises as opposed to loss of use of it"); *Roundabout Theatre*, 302 A.D.2d at 8 (same).

Here, there is no "period of restoration" because there is nothing on Plaintiff's premises that needs to be repaired, rebuilt, or replaced.  Plaintiff's premises remain intact and it could choose to sell food and alcohol for off-premises consumption.  When determining the parties' intent, the policy must be read as a whole, "with the assumption that every provision was intended to serve a

purpose." *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013) (citations omitted) (citing *Founders Ins.*, 237 Ill. 2d at 433). Adopting Plaintiff's interpretation of "direct physical loss" would render the entire "period of restoration" clause meaningless since it would be illogical to define the end date for coverage as the completion of a "repair" if the property does not need to be repaired.

## II. THERE IS NO COVERAGE UNDER THE CIVIL AUTHORITY ADDITIONAL COVERAGE PART.

The Civil Authority additional coverage part has a very specific set of terms and conditions that must be met. To establish coverage under Civil Authority, Plaintiff has the burden to establish all four of the following elements: (1) damage to property other than property at the described premises that is caused by a Covered Cause of Loss, (2) an action by a civil authority that prohibits access to the described premises, (3) the action of civil authority prohibits access to the area immediately surrounding the damaged property, and the insured premises are within that area, and (4) the action of civil authority is taken in response to dangerous physical conditions that result from the property damage or continuation of the Covered Cause of Loss that caused the damage. (SOF at ¶ 44.) Plaintiff has not and cannot establish a single one of these elements. The first element is absent because, for the reasons explained above, the coronavirus does not cause damage to property and is not a direct physical loss.

The second element cannot be met because Plaintiff's access to its premises has not been prohibited. While the Executive Orders limit the business operations that may be conducted on the premises, much like a zoning ordinance, they do not prohibit access to the premises. Rather, Plaintiff's establishment is an Essential Business and thus has been allowed to access and use its premises to fulfill take-out and delivery orders. Even owners and employees of Non-Essential Businesses are allowed access to their premises in order to perform Minimum Basic Operations,

such as processing payroll and employee benefits, ensuring security of the premises, maintaining inventory, and preserving the condition of the premises. (SOF at ¶ 22.) Actions of civil authority that interrupt business but do not prohibit access to the insured premises entirely do not fall within the terms of Civil Authority provisions such as the one in the Society Policy. *See, e.g., Kean, Miller, Hawthorne, D'Armond McCowan & Jarman LLC v. Nat'l Fire Ins. Co. of Hartford,* No. 06-770-C, 2007 WL 2489711, at * 4 (M.D. La. Aug. 29, 2007) (no civil authority coverage for state of emergency declared as result of Hurricane Katrina where insured conceded employees had access to building); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, No. Civ.A. 02-106, 2002 WL 31996014, at * 2 (E.D. La. Sept. 30, 2002) (no civil authority coverage for hotel whose customers were prevented from accessing hotel by FAA's cancellation of flights).

For similar reasons, Plaintiff cannot meet the third element, which requires an action of civil authority that prohibits access to the immediate area surrounding Plaintiff's property. Plaintiff appears to take the position that this element is met by the Executive Orders, which apply to the entire state of Illinois. The logical extension of this argument is that the Executive Orders prohibit access to the entire state of Illinois, which is clearly not the case. Thousands, if not millions, of employees of Essential Businesses go to work every day in Illinois, and the public streets and sidewalks throughout the state, including those surrounding Plaintiff's premises, remain open and in use by the public. Essential Businesses are operating, and Non-Essential Businesses are carrying on Minimum Basic Operations. Residents are going to their favorite restaurants to collect carry-out orders and performing other Essential Activities such as going to the grocery store, pharmacy, or engaging in "outdoor activity" by walking around the block.

Finally, the requirement that the action of civil authority was taken in response to dangerous conditions caused by damage to property other than the described premises cannot be

met. First, there has been no property damage because, as discussed above, neither the virus that causes COVID-19 nor the Executive Orders entered in response to the virus have caused property damage. Second, the Executive Orders were entered to inhibit and slow the **future** transmission of COVID-19 between people, and actions taken to prevent a future harm do not trigger coverage under the Civil Authority additional coverage part of the Society Policy. *See, e.g., United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128, 129 (2d Cir. 2006) (no civil authority coverage for airline after federal government shutdown airport after 9/11 because order issued due to risk of future terrorist attacks, not as result of damage to Pentagon); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) (no civil authority coverage because evacuation order issued due to future possible storm surge, high winds, and flooding based on projected path of Hurricane Gustav, not due to property damage already caused by Gustav in Caribbean); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.,* No. 09-6057, 2010 WL 4026375, at * 3 (E.D. La. Oct. 12, 2010) (civil authority coverage not triggered by evacuation order issued prior to arrival of Hurricane Gustav because order not issued as result of existing direct physical loss or damage to property); and *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins.,*  --- F. Supp. 3d ---, No. 4:19-cv-00693, 2020 WL886120, at * 5-6 (D. S.C. Feb. 24, 2020) (civil authority coverage not triggered by evacuation order issued prior to arrival of Hurricane Florence).

Like the cases cited above, the Executive Orders were not issued because of any property damage, but instead to prevent a future harm, i.e., the *future* transmission of the virus between people. The timetable for fully reopening Plaintiff's businesses to the public has nothing to do with repairing, mitigating, or responding to any property damage, or even the presence of the virus on property as of the date the orders were entered, since the virus can be quickly removed with household cleaning products. Instead, the Executive Orders were to use social distancing to slow

14

the rate of infection, and thus the timetable for fully reopening businesses in Illinois is tied to the percentage of positive COVID-19 cases, the rate of hospital admissions for COVID-19 like illnesses, and the available capacity of ICU beds and ventilators, instead of the time it would take to clean premises. (SOF at ¶ 34.) Thus, for all of the reasons discussed above, there is no coverage available to Plaintiff under the Society Policy's Civil Authority additional coverage.

## **CONCLUSION**

WHEREFORE, the Defendant, Society Insurance, respectfully requests that this Honorable Court enter an order either dismissing Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) or, in the alternative, granting summary judgment in favor of Society on the Plaintiff's Complaint in its entirety; declaring there is no coverage for Plaintiff's claims under the Society Policy; and granting Society such other and further relief as this Court deems just.

Thomas B. Underwood (#3122933)
Michael D. Sanders (##6230187)
Michelle A. Miner (#6299524)
Amy E. Frantz (#6312526)
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
tbu@pw-law.com
msanders@pw-law.com
mminer@pw-law.com
afrantz@pw-law.com

Respectfully submitted,

Society Insurance

By:   /s/ Thomas B. Underwood
        Counsel for Defendant