**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| JDS 1455, INC. d/b/a WEST ON NORTH, and all others similarly situated | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:20-cv-02546 |
| v. | ) ) | |
| SOCIETY INSURANCE, | ) ) | Honorable Judge Rebecca R. Pallmeyer Honorable Magistrate Judge Beth W. Jantz |
| Defendant. | ) | |

<u>**DEFENDANT SOCIETY INSURANCE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6) OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**</u>

Thomas B. Underwood (#3122933)
Michael D. Sanders (##6230187)
Michelle A. Miner (#6299524)
Amy E. Frantz (#6312526)
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
tbu@pw-law.com
msanders@pw-law.com
mminer@pw-law.com
afrantz@pw-law.com

*Attorneys for Society Insurance*

# TABLE OF CONTENTS

Table of Cases ................................................................................................................ i

INTRODUCTION ................................................................................................................ 1

I.   THE COURT MAY TAKE JUDICIAL NOTICE OF THE DOCUMENTS ATTACHED TO
     SOCIETY'S STATEMENT OF FACTS ........................................................................ 2

II.  PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM FOR COVERAGE UNDER THE
     BUSINESS INCOME OR EXTRA EXPENSES ADDITIONAL COVERAGES ................... 4

     A.   Plaintiff Fails to Allege A Direct "Physical" Loss or Damage Caused by a
          Covered Cause of Loss ............................................................................... 4

     B.   Plaintiff's Emphasis on the Distinction Between Loss Of Property and Loss
          To Property Is Misplaced ........................................................................... 8

     C.   Plaintiff's Alleged Loss of Use Was Not Caused by A Physical Substance
          on the Premises That Physically Altered Insured Property ....................... 9

     D.   The Period of Restoration Clause Applies to Plaintiff's Claim ............... 13

III. THERE IS NO COVERAGE UNDER THE CIVIL AUTHORITY ADDITIONAL COVERAGE
     PART ................................................................................................................... 13

IV.  THE SOCIETY POLICY IS NOT AN "ALL-RISK" POLICY AND THE ABSENCE OF A
     VIRUS EXCLUSION DOES NOT CREATE COVERAGE ............................................ 15

CONCLUSION ................................................................................................................ 16

# Table of Cases

*Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743 (7th Cir. 2015) ........................... 7

*Bd. of Educ. of Maine Twp. High Sch. Dist. 207 v. Int'l Ins. Co.*, 292 Ill. App. 3d 14, 684 N.E.2d 978 (Ill. App. Ct. 1997) ................................................................................ 20

*Bd. of Educ. of Twp. High School Dist. No. 211 v. Int'l Ins. Co.*, 308 Ill. App.3d 597, 720 N.E.2d 622 (1st Dist. 1999) ..................................................................................... 13

*Bodnar v. Lake County Jail, et al.*, 2:20-CV-157-PPS-APR, 2020 WL 1940742 (N.D. Ind. Apr. 22, 2020) ............................................................................................. 4

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* No. Civ. 98–434–HU, 1999 WL 619100 (D.Or. Aug.4, 1999) .............................................................................................. 6

*Cooper v. Travelers Indem. Co. of Ill.*, No. C-01-2400-VRW, 2002 WL 32775680 (N.D. Cal. Nov. 4, 2002) .............................................................................................. 14

*Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill.2d 303, 856 N.E.2d 338 (Ill. 2006) ..... 9, 17

*Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) ....................................................... 2, 4

*Diesel Barbershop LLC, et al. v. State Farm Lloyds*, Case No. 5:20-cv-461-DAE (W.D. Tx. Aug. 13, 2020) ................................................................................................ 13

*Farmer's Ins. Co v. Trutanich*, 858 P.2d 1332 (Or. Ct. App. 1993) ............................................. 10

*Gavrilides Mgmt. Co. et al. v. Michigan Ins. Co.*,  Case No. 20-258-CB-C30, Ingham County, MI, July 1, 2020 Hr'g Tr. ................................................................................. 8, 9

*Geller v. Cuomo*, 2020 WL 4463207 (S.D.N.Y. 2020) ...................................................... 4

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-CV-04418 WHW, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) ...................................................... 14

*Hays v. Country Mut. Ins. Co*, 28 Ill. 2d 601 (1963) ................................................... 21

i

*J.O. Emmerich & Assocs.*, No. 3:06 cv 00722, 2007 WL 9775576 (S. D. Miss. Nov. 19, 2007) 11

*LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937 (7th Cir. 2010) .................................... 2

*Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600 (7th Cir. 2002) ............ 3

*Laborers' Pension Fund v. Murphy Paving and Sealcoating, Inc.*, No. 16 C 8043, 2020 WL
1515708 (N.D. Ill. Mar. 30, 2020) ......................................................................................... 2

*Mama Jo's, Inc. v. Sparta Ins. Co.*, Case No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fl.
June 11, 2018) .......................................................................................................................... 16

*Manpower, Inc. v. Ins. Co. of Penn.*, No. 08 C 00085, 2009 WL 3738099 (E.D. Wis. Nov. 3,
2009) ........................................................................................................................................ 19

*Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E. 2d 1130, 1144 (Ohio
Ct. App. 2008) ......................................................................................................................... 16

*Matzner v. Seaco Ins. Co.*, 9 Mass. L. Rptr. 41 (Mass. Super. 1998) ........................................... 14

*Mellin v. N. Sec. Ins. Co.*, 115 A.3d 799 (N.H. 2015) ........................................................... 10, 14

*Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed. Appx. 823 (3d Cir. 2005) ................................. 10

*Ne. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-cv-00245-WCO, 2014 WL 12480022
(N.D. GA. May 23, 2014) ........................................................................................................ 12

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y.
2014) .......................................................................................................................................... 8

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005) ......................... 11

*Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F.Supp.2d 280 (S.D.N.Y. 2005) ................................. 8

*Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815 (S.D. Ia. 2015) .................................... 11

*Rose's 1, LLC v. Erie Ins. Exch.*, Case No. 2020 CA 002424B (D.C. Sup. Ct. Aug. 6, 2020) .... 11

*Roundabout Theatre Co. v. Cont'l Cas.* 302 A.D.2d 1 (N.Y. App. Div. 2002) ............................ 11

*State Auto Prop. and Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355 (7th Cir. 2017) ............ 18

*Sullivan v. Std. Fire Ins. Co.*, 956 A.2d 643 (Del. 2008) ............................................................. 10

*TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010) ......................................... 10, 14

*Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 757 N.E.2d 481 (2001) .............................. 5

*U.S. v. Borden*, 2020 WL 4286820 (W.D. Wash. 2020) ................................................................ 4

*United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128 (2d Cir. 2006) ................... 19

*Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569 (6th Cir. 2012) ............... 8, 16

*W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Co. 1968) ............................... 10, 14

*Ward Gen'l Ins. Servs., Inc. v. Employer's Fire Ins. Co.*, 7 Cal. Rptr. 3d 844 (Cal. Ct. App. 2003) ........................................................................................................................................................ 8

*Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773 (7th Cir. 2015) .................................................. 20

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) .................................................... 2

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013) ...................................................................... 2

*Wolfford v. Baten ISF/Jordan Unit*, 20-cv-094-Z-BR, 2020 WL 3493548 N.D. Tx. June 1, 2020) ........................................................................................................................................................ 4

*Zurich Ins. Co. v. Northbrook Excess & Surplus Ins. Co.*, 145 Ill. App. 3d 175, 494 N.E.2d 634, 642 (1986) ...................................................................................................................................... 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| JDS 1455, INC. d/b/a WEST ON NORTH, and all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:20-cv-02546 |
| v. | ) ) | |
| SOCIETY INSURANCE, | ) ) | Honorable Judge Rebecca R. Pallmeyer Honorable Magistrate Judge Beth W. Jantz |
| Defendant. | ) | |

## DEFENDANT SOCIETY INSURANCE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6) OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

The Court should grant Society's motion because Plaintiff has failed to plausibly allege the threshold terms and conditions of coverage are met under the Business Income, Extra Expense, and Civil Authority additional coverages. Plaintiff's Complaint does not allege Plaintiff sustained a "direct *physical* loss of or damage to covered property," and therefore has not plead facts sufficient to support a finding of coverage under the Business Income and Extra Expense coverages. Allegations that the coronavirus "is in essence everywhere" do not demonstrate a distinct, demonstrable alteration of the physical characteristics of covered property, as required under Illinois law to trigger coverage under a policy which requires "direct physical loss of or damage to" covered property. The Complaint also fails to allege the elements necessary for coverage under the Civil Authority additional coverage part.

1

Since there is no coverage under the Society Policy, and a bona fide dispute exists regarding coverage, Plaintiff's Complaint fails to state a claim for bad faith. Plaintiff's Complaint should be dismissed in its entirety with prejudice accordingly.

## I. THE COURT MAY TAKE JUDICIAL NOTICE OF THE DOCUMENTS ATTACHED TO SOCIETY'S STATEMENT OF FACTS

The Court should take judicial notice of the documents attached to Society's Statement of Unmaterial Disputed Facts ("SOF" Dkt. No. 19) under Federal Rule of Evidence. In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider documents central to the complaint and referred to in it, and information that is properly subject to judicial notice, including matters in the public record. *Laborers' Pension Fund v. Murphy Paving and Sealcoating, Inc.*, No. 16 C 8043, 2020 WL 1515708, at *3 (N.D. Ill. Mar. 30, 2020) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) and citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012)). This includes information published on government websites. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 n. 3 (7th Cir. 2010); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003). The documents attached to Society's SOF fall within these categories.

The Court should take judicial notice of Governor Pritzker's COVID-19 related Executive orders (Exhibits 2-6) and the relevant portion of the Society Policy (Exhibit 10) because they are central to Plaintiff's Complaint, although Plaintiff only attached the policy to its Complaint (as Exhibit A). (Dkt. No. 1 at ¶¶ 15-17, 34, 37, 55-56, 68; *Id.* at pp. 79-110.) Plaintiff alleges the Executive Orders were the reason it was "forced to halt ordinary operations," the cause of the loss of business income they seek to recover, and constitute the necessary government action required to trigger coverage under the Civil Authority additional coverage. (*Id.* at ¶¶ 17, 34.) (*See also*, Plf.'s Resp., Dkt. No. 30 at pp. 3, 4, 6-9.) The Executive Orders were thus included as exhibits in

Society's SOF and should have been attached to the Complaint. Moreover, the Executive Orders are public records available on the Illinois government's website for its coronavirus response.[1]

The Court should likewise take judicial notice of Exhibit 1, the guidance for cleaning and disinfecting public spaces published by the CDC on its website.[2] *Denius*, 330 F.3d at 926. Substantially the same information is provided in multiple places on the CDC's website for the coronavirus, and the Environmental Protection Agency's list of 473 disinfectants for use against the coronavirus can be found on the EPA's website at https://www.epa.gov/pesticide-registration/list-n-disinfectants-use-against-sars-cov-2-covid-19 (last visited August 19, 2020). Moreover, Plaintiff's Complaint and Response contain allegations regarding supposed CDC scientific reports on the nature of the coronavirus and uses these unspecified "reports" as the basis of its allegations that the virus is "in essence everywhere" and renders property exposed to the virus unsafe and dangerous. (Dkt. No. 1 at ¶¶ 11, 12-13; Dkt. No. 30 at pp. 3, 6, 10, 15.) Further, courts around the country have taken judicial notice of statements made by the CDC regarding the virus. *See, e.g., Bodnar v. Lake County Jail, et al.*, 2:20-CV-157-PPS-APR, 2020 WL 1940742, at *2 (N.D. Ind. Apr. 22, 2020); *Geller v. Cuomo*, 2020 WL 4463207, fn. 1 (S.D.N.Y. 2020); *U.S. v. Borden*, 2020 WL 4286820, *1 (W.D. Wash. 2020); *Wolfford v. Baten ISF/Jordan Unit*, 20-cv-094-Z-BR, 2020 WL 3493548, at *1 n.2 (N.D. Tx. June 1, 2020).

Similarly, the Court should take judicial notice of Exhibits 7-9 as matters in the public record that were published by governmental entities on official government websites. *See, e.g., Denius*, 330 F.3d at 926. Although Ex. 7, the March 16, 2020 Compliance Directive issued by the Illinois Liquor Control Commission is no longer available on its website, a March 19, 2020

---

[1] At https://coronavirus.illinois.gov/s/resources-for-executive-orders (last visited August 19, 2020).

[2] At https://www.cdc.gov/coronavirus/2019-ncov/community/pdf/Reopening_America_Guidance.pdf (last visited August 19, 2020).

guidance to local liquor control commissions, published by the Illinois Liquor Control Commission remains available.[3] The March 19 Guidance discusses and clarifies the March 16 Compliance Directive. Exhibit 8, the Notice relating to restrictions on restaurants and bars published by the City of Chicago Department of Business Affairs and Consumer Protection is available on the City's website.[4] Finally, Exhibit 9, Governor Pritzker's five-phase plan to reopen Illinois, is a public record published on an Illinois government website.[5]

## II. PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM FOR COVERAGE UNDER THE BUSINESS INCOME OR EXTRA EXPENSES ADDITIONAL COVERAGES

### D. Plaintiff Fails to Allege A Direct "Physical" Loss or Damage Caused by a Covered Cause of Loss

Plaintiff falsely asserts Society's position is "direct physical loss of or damage to property" "can only exist where a building or property has suffered some sort of permanent structural harm." (Dkt. No. 30 at 14.) Rather, Society's position is that the word "physical," as held by the Illinois Supreme Court, requires an alteration in the property's "appearance, shape, color or in other material dimension." *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 301, 757 N.E.2d 481 (2001)). Or, put differently, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A *Couch On Insurance* § 148.46 (3d Ed. 2019) (emph. added). Plaintiff's assertion that "[a]ll the law requires is loss or damage," is contrary to the Society Policy

---

[3] https://www2.illinois.gov/ilcc/News/SiteAssets/Pages/COVID/March%20Updates/COVID%20On%20Premise%20%28March%2031%20update%29.pdf (last visited August 19, 2020).
[4] https://www.chicago.gov/content/dam/city/depts/bacp/general/2020coronavirusbacpnoticeclosureofrestaurantsandbars.pdf (last visited August 19, 2020).
[5] https://coronavirus.illinois.gov/s/restore-illinois-introduction (last visited August 19, 2020).

requirement of a "direct physical loss of or damage to" property and the Illinois Supreme Court's controlling holding in *Eljer*. When a policy requires a "physical" harm, there must be an alteration in the physical characteristics of the property. Intangible or incorporeal losses or damage do not suffice. *Eljer*, 197 Ill. 2d at 301-02.

Because Plaintiff has failed to allege its property has been altered in "appearance, shape, color or in other material dimension," it fails to allege the existence of a direct physical loss or direct physical damage. While Plaintiff's Complaint alleges the virus adheres to surfaces of physical objects, it does not allege the virus in any way alters the physical characteristics of these objects. (Dkt. No. 1 at ¶ 11.) Common, everyday experience demonstrates that the mere fact something has come to rest on an object does not equate to a physical alteration of that object. "The mere adherence of molecules to porous surfaces, without more, does not equate physical loss or damage," and "[t]he recognition that physical damage or alteration of property may occur at the microscopic level does not obviate the requirement that physical damage need be distinct and demonstrable." *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* No. Civ. 98–434–HU, 1999 WL 619100, at *7 (D.Or. Aug.4, 1999) (holding no coverage for clothing exposed to elevated mold spore counts where policy required "direct physical loss **of** or damage to" property).

Here, Plaintiff's Complaint does not allege a distinct and demonstrable physical change in its property. In fact, Plaintiff does not even plead the virus was on its premises and instead simply alleges that the virus "is in essence everywhere," thus, apparently, rendering all property in the nation dangerous and unusable at all times. (Dkt. No. 1 at ¶ 13.) Not only is this conclusory allegation speculative and implausible, it falls far short of pleading a distinct and demonstrable change in the physical characteristics of the property, such as its "appearance, shape, color or in other material dimension." *Eljer*, 197 Ill. 2d at 301. This argument defies common knowledge

5

and experience that property can be used even where the virus has likely been present—such as at a hospital or grocery store—and that the danger of the possible presence of the virus can be mitigated through cleaning with household disinfectants, like the disinfectant wipes and hand sanitizer provided at the entrances of many businesses.[6]

Plaintiff attempts to avoid the consequence of its failure to allege a "direct physical" loss or damage by arguing that "direct physical" in "direct physical loss of or damage to" property modifies "loss" but not "damage." Neither of the cases cited by Plaintiff support its novel claim. *See*, *Zurich Ins. Co. v. Northbrook Excess & Surplus Ins. Co.*, 145 Ill. App. 3d 175, 188, 494 N.E.2d 634, 642 (1986) (discussing when coverage is triggered for "bodily injury, sickness or disease") and *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 747 (7th Cir. 2015) (holding that hail damage constituted a "direct physical loss" because it changed the physical characteristics of the property). Plaintiff has not cited a single case analyzing a variant of the language "direct physical loss or damage" that has held "direct physical" does not modify "damage." Moreover, courts have considered, and consistently rejected, Plaintiff's argument. *See e.g.*, *Universal Image Prods., Inc. v. Fed. Ins. Co*., 475 Fed. Appx. 569 (6th Cir. 2012) ("direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co*., 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (holding that "direct physical" modifies both loss and damage in the phrase "direct physical loss or damage"); *Phila. Parking Auth. v. Fed. Ins. Co.,* 385 F.Supp.2d 280, 287–88 (S.D.N.Y. 2005) (same); *Ward Gen'l Ins. Servs., Inc. v. Employer's Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 489 (Cal. Ct. App. 2003) (same); and *Gavrilides Mgmt. Co. et al. v. Michigan Ins. Co*.,  Case No. 20-258-CB-C30, Ingham County, MI, July 1,

---

[6] *See, e.g*, https://www.epa.gov/pesticide-registration/list-n-disinfectants-use-against-sars-cov-2-covid-19  (the Environmental Protection Agency's list of 473 disinfectants for use against the virus that causes COVID-19).

2020 Hr'g Tr. at 18:21-19:4[7] (in a decision that found no coverage for COVID-19 related business interruption, stating "[C]ommon rules of grammar would apply to make that phrase a short-cut way of saying "direct physical loss of property or direct physical damage to property.").

Due to Plaintiff's inability to come within the terms of coverage, it also makes the unsupported request that this Court should read the requirement of a Covered Cause of Loss, i.e., a "direct physical loss," out of the policy. Again, Plaintiff cannot cite to a single case in the nation where a court has done so, as such an action would be contrary to the Illinois rule of policy interpretation that an insurance policy must be construed as a whole, giving effect to every provision. *Country Mut. Ins. Co. v. Livorsi Marine, Inc*., 222 Ill.2d 303, 311, 856 N.E.2d 338 (Ill. 2006). The *Gavrilides* court also addressed this issue, holding "it is clear from the policy coverage provision only direct physical loss is covered." July 1, 2020 Hr'g Tr. at 18:10-21.

Finally, Plaintiff's reference to the definition of "property damage" in the Businessowners Liability Coverage Form is both irrelevant and highly misleading, as the Businessowners Liability Coverage Form provides third-party liability coverage and is not the form under which Plaintiff seeks first party property coverage. Plaintiff seeks coverage under the Businessowners Special Property Coverage Form, which does not use that definition. However, Plaintiff's attempted misdirection does confirm Society's position that the language at issue in this case, "direct physical loss of or damage to" property does ***not*** include the "loss of use of tangible property that is not physically injured," as the policy is explicitly states when loss of use is covered. In sum, Plaintiff's attempt to evade the policy requirement that loss or damage must be both direct and physical to be entitled to coverage is unavailing and Society's motion should be granted.

### E. Plaintiff's Emphasis on the Distinction Between Loss <u>Of</u> Property and Loss <u>To</u> Property Is Misplaced

---

[7] A copy of the *Gavrilides* transcript was provided to the Court in Society's Statement of Recent Decisions (Dkt. No. 32) and attached as Exhibit A thereto.

It is unclear why Plaintiff believes the use of the word "of" is significant. The majority of the first-party property insurance cases cited by Plaintiff construing a variation of "direct physical loss or damage" do *not* contain "loss of," indicating that if the distinction matters, it weighs *against* Plaintiff. *Mellin v. N. Sec. Ins. Co.*, 115 A.3d 799, 802 (N.H. 2015) ("direct loss **to** property. . . if that loss is a physical loss **to** property") (emph. added); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 702 (E.D. Va. 2010) ("direct physical loss **to** property") (emph. added); *W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 54 (Co. 1968) ("direct physical loss"); *Farmer's Ins. Co v. Trutanich*, 858 P.2d 1332, 1334, 1336 (Or. Ct. App. 1993) ("accidental direct physical loss **to** property") (emph. added); *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed. Appx. 823, 825 (3d Cir. 2005) ("direct physical loss **to** property") (emph. added); and *Sullivan v. Std. Fire Ins. Co*., 956 A.2d 643 (Del. 2008) ("*direct physical loss* **to** the property") (emph. added).

Plaintiff does not articulate what it believes the difference between "loss of" and "loss to" is, other than to make the undeveloped argument that "loss of" includes loss of use. Plaintiff does not cite to a single case to support this supposed distinction; however, multiple courts have expressly rejected this argument. *See e.g.*, *Rose's 1, LLC v. Erie Ins. Exch.,* Case No. 2020 CA 002424B, at *5 (D.C. Sup. Ct. Aug. 6, 2020) (finding no coverage for COVID-19 related business interruption coverage under policy that required "direct and accidental loss **of** or damage to covered property"); *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005) (no coverage for loss of use of manufacturing facility caused by power outage under policy that covered "all risk of direct physical loss **of** or damage to property"); *Phoenix Ins. Co. v. Infogroup, Inc*., 147 F. Supp. 3d 815, 823-25 (S.D. Ia. 2015) (loss of use did not constitute "direct physical loss **of** or damage to property"); *J.O. Emmerich & Assocs.*, No. 3:06 cv 00722, 2007 WL 9775576, at *2-4 (S. D. Miss. Nov. 19, 2007) (loss of use of software and electronic files that were not

physically altered during power outage did not constitute "direct physical loss **of** or damage to property"); and *Roundabout Theatre Co. v. Cont'l Cas.* 302 A.D.2d 1, 5-7 (N.Y. App. Div. 2002) (loss of use not covered under policy covering "loss **of**, damage to, or destruction of property").

For example, in *Northeast Georgia Heart Center*, the court explained that when a policy requires "direct physical loss **of** or damage to" covered property, coverage may be triggered when the insured loses physical possession of the property, but not when it merely suffers a loss of use but retains physical possession. *Ne. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-cv-00245-WCO, 2014 WL 12480022, at *1 (N.D. GA. May 23, 2014). The court acknowledged the "critical" distinction "between a loss of physical possession and a loss of use" and found no coverage was available for an inability to use covered property as intended. *Id.* In that case, the manufacturer of a generator used by the plaintiff to operate a PET scanner initiated a voluntary recall and sent the plaintiff a letter directing it to immediately stop using the generator, which it did. *Id.* at *2. The court held the plaintiff was not entitled to business interruption coverage, because the income loss was not the result of a "direct physical loss of or damage to" covered property but was caused by the plaintiff's compliance with the manufacturer's letter, which was merely an "ethereal loss." *Id.* at *5. The court observed that "[w]hat remains entirely absent from plaintiff's loss is some kind of physical effect on the covered property," as the generator was physically functional, and the letter had been issued as a precaution. *Id.* As a result, the "plaintiff did not suffer a direct physical loss because no physical alteration or spatial change in the property's location" caused the loss of business income. *Id.* at *4. The same is true here where Plaintiff's property has not incurred any physical alteration or spatial change.

    **F.    Plaintiff's Alleged Loss of Use Was Not Caused by A Physical Substance on the Premises That Physically Altered Insured Property**

Plaintiff argues that the presence of a dangerous substance on or in real or personal property constitutes "physical loss or damage." The cases Plaintiff relies on are both factually and legally distinguishable, and to the extent they can be read to hold that a loss of use constitutes "direct physical loss or damage" in the absence of an alteration in the physical characteristics of the property, they are contrary to Illinois law as articulated by *Eljer*, for the reasons set forth in detail above. Plaintiff's cases, unlike the facts here, involve the demonstrable presence of a physical substance *on the insured property* that physically altered the insured property, such as friable asbestos or toxic fumes. In contrast, the lack of distinct, demonstrable physical alteration to Plaintiff's property is apparent from the fact that Plaintiff does not allege the virus was ever on its property and instead speculatively alleges that the virus "is in essence everywhere." (Dkt. No. 1 at ¶ 13.) The Complaint is devoid of any allegations that could support a plausible inference that the virus was even on the property and nowhere alleges it physically altered property. *See*, *Diesel Barbershop LLC, et al. v. State Farm Lloyds*, Case No. 5:20-cv-461-DAE, at *13-14 (W.D. Tx. Aug. 13, 2020) (finding a claim for business interruption caused by COVID-19 did not allege a "distinct, demonstrable physical alteration of the property.")

In addition, in all the cases cited by Plaintiff, the loss of use was caused by the presence of a physical substance on the premises that physically altered insured property. *See e.g.*, *Bd. of Educ. of Twp. High School Dist. No. 211v. Int'l Ins. Co.*, 308 Ill. App.3d 597, 720 N.E.2d 622 (1st Dist. 1999) (state statute prohibits the use and occupancy of a school building containing friable asbestos); *Matzner v. Seaco Ins. Co.*, 9 Mass. L. Rptr. 41, at *1 (Mass. Super. 1998) (tenants vacated due to carbon monoxide in apartment); *Cooper v. Travelers Indem. Co. of Ill.*, No. C-01-2400-VRW, 2002 WL 32775680, at * 1 (N.D. Cal. Nov. 4, 2002) (tavern closed by local authorities because well water contained e-coli); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,

No. 2:12-CV-04418 WHW, 2014 WL 6675934, at *2 (D.N.J. Nov. 25, 2014) (facility evacuated due to ammonia leak in building); *Mellin*, 115 A.3d at 801 (health inspector advised tenants to move out of apartment due to cat urine odor); *Ward*, 715 F. Supp. 2d at 709 (home rendered uninhabitable by sulfuric gas emitting from drywall); *W. Fire Ins.*, 437 P.2d at 54 (church rendered uninhabitable by gasoline fumes permeating building).

The facts of this case are simply not analogous to those of the cases relied on by Plaintiff. Plaintiff does not allege that any speculative presence of the virus on its premises was the reason it suspended its business operations. Rather, Plaintiff alleges that the Executive Orders are the reason it was "forced to halt ordinary operations." (Dkt. No. 1 at ¶ 17.) Moreover, Plaintiff's premises have remained usable and habitable. The Executive Orders Plaintiff relies upon in its Complaint and Response did <u>not</u> prohibit Plaintiff from using its premises for preparing food for commercial sale; it merely prevented Plaintiffs from allowing groups of people to gather for dining inside the property. (Dkt. No. 19-1 at pp. 12-37 and 19-2 at pp.1-12 (Executive Orders 2020-07, 2020-10, 2020-18, 2020-33, 2020-32).) The Orders allowed and encouraged all restaurants, including Plaintiff's, to continue operating on its premises to sell food and beverages for off-premises consumption. (*Id*.) Moreover, the March 16 Executive Order specifically provided that "customers may enter the premises to purchase food or beverage for carry-out" (Dkt. No. 19-1 at p. 13). Additionally, the March 20, 2020 Order allowed employees of all businesses, including Non-Essential Businesses, to perform "Minimum Basic Operations" on their premises, including processing payroll and employee benefits, ensuring security of the premises, maintaining inventory, and preserving the condition of the premises. (*Id*. at p. 22.)

Finally, even if Plaintiff had alleged the virus was present in the premises it would still not constitute a physical loss or damage because the virus does not render property uninhabitable or

11

change any physical characteristic of property. The premise that the actual or suspected presence of the virus on a property renders it completely unusable and uninhabitable is simply implausible and contrary to the Executive Orders cited in Plaintiff's Complaint. If that were true, all property in the state would be closed to the public, and grocery stores and hospitals would be shuttered. Plaintiff's allegations are simply not analogous to a case where a poisonous chemical permeates a building or cases where a building is at risk of explosion or collapse and the building cannot be used for any purpose. The Executive Orders allowed and encouraged businesses to operate and buildings to be used and inhabited, and common experience has shown that to have happened throughout the pandemic. Common sense and experience also tells us that any feared presence of the virus can be mitigated by hand washing or by cleaning using one of the 482 cleaning products approved by the EPA[8], and courts have held that the presence of a substance that can be removed through cleaning does not constitute a physical loss or damage. *See, e.g.*, *Universal Image Prods., Inc.*, 475 Fed. Appx. at n.8 (cleaning personal property to remove mold and bacteria contamination was an economic loss, not a tangible, physical loss); *Mama Jo's, Inc. v. Sparta Ins. Co*., Case No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fl. June 11, 2018) (construction dust and debris that formed a paste that adhered to surfaces in restaurant could be removed through cleaning and thus did not constitute physical loss or damage), *aff'd* ---Fed. Appx.---, No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. 2020); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E. 2d 1130, 1144 (Ohio Ct. App. 2008) (mold that could be removed through cleaning did not constitute physical injury even though it would reoccur "in short order"). In sum, Plaintiff's Complaint has not alleged any facts that could support a plausible inference that its premises are unusable or uninhabitable.

---

[8]  *See*, https://www.epa.gov/pesticide-registration/list-n-disinfectants-use-against-sars-cov-2-covid-19 (last visited August 19, 2020).

### D.     The Period of Restoration Clause Applies to Plaintiff's Claim

Plaintiff's argument that the period of restoration "coverage" does not apply to its claim for "property damage" tortures the policy language beyond recognition.  (Dkt. No. 30 at 15.)  First, Plaintiff has never filed a claim with Society for property damage and is not seeking coverage for property damage in this litigation.  Second, the period of restoration clause is contained in the Business Income additional coverage and applies to all claims thereunder, including Plaintiff's.  The Business Income coverage states "[w]e will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" (Dkt. No. 1 at p. 83, ¶ g.1.a.)  Thus, the period of restoration clause, which defines the end date of the period of recoverable loss of business income as "[t]he date when the property at the described premises should be repaired, rebuilt, or replaced," is not a "coverage" but a description of the time period for which Business Income coverage is available.  To interpret "direct physical loss of or damage to" property as including situations such as Plaintiff's, where there is no need to repair, rebuild, or replace Plaintiffs' property, as those terms are commonly understood, because Plaintiffs' property is still in their possession, custody, and control, and remains physically functional and undamaged, would render the period of restoration clause meaningless. This is contrary to Illinois law that an insurance policy must be construed as a whole, giving effect to every provision.  *Country Mut. Ins. Co.*, 222 Ill.2d at 311.  This is an additional reason Plaintiff's interpretation of the Society Policy should be rejected, and the Complaint should be dismissed.

### III.     THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR COVERAGE UNDER CIVIL AUTHORITY

For coverage to exist under Civil Authority, all four of the following elements must be present:  (1) damage to property other than property at the described premises that is caused by a Covered Cause of Loss, (2) an action by a civil authority that prohibited access to the described

13

premises, (3) the action of civil authority prohibited access to the area immediately surrounding the damaged property, and the insured premises are within that area, and (4) the action of civil authority was taken in response to dangerous physical conditions that result from the property damage or continuation of the Covered Cause of Loss that caused the damage. (Dkt. No. 1 at p. 85-6, ¶ k.) As explained above, the Complaint fails to allege the first element because it does not allege damage to property other than property at the described premises caused by a Covered Cause of Loss, i.e., a direct physical loss.

The second condition has not been met because the Executive Orders, on their face, do not prohibit access to Plaintiff's premises. The term "access" in the policy is not ambiguous and must be afforded its plain, ordinary meaning. *State Auto Prop. and Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017). "Access" is defined as "permission, liberty, or ability to enter, approach, or pass to and from a place or to approach or communicate with a person or thing."[9] The Executive Orders do not prohibit individuals from entering the premises, including customers. Rather, the March 16 Executive Order specifically provides that "customers may enter the premises to purchase food or beverages for carry-out." (Dkt. No. 19-1 at p. 13.) There is simply nothing in the language of the Society Policy that indicates it is meant to cover situations where the activities of a subset of individuals on the premises are limited, rather than a situation where access to the premises is prohibited.

Plaintiff's Complaint fails to allege the existence of the third element, that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority" for the same reason. The Executive Orders did not prohibit access to the area immediately surrounding the purported damaged property. *Manpower, Inc. v. Insurance Company of Pennsylvania*, cited by

---

[9] The Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/access?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

Plaintiff, is helpful in illustrating the difference between the facts of Plaintiff's claim and prohibition of access to an area. No. 08 C 00085, 2009 WL 3738099 (E.D. Wis. Nov. 3, 2009). In *Manpower*, a portion of the building in which the plaintiff's office space was located collapsed, rendering the foundation and support structure of the entire building, including the portion in which plaintiff's office was located, unstable and thus uninhabitable. *Id.* at 4. Occupancy of the entire building was prohibited—not limited or restricted—by the local building authority. *Id.* at 2. This is an example of prohibition of access, the *Manpower* plaintiff was not allowed to enter, i.e. access, the property for any reason. In contrast, because the public was allowed to enter the area immediately surrounding Plaintiff's premises for Essential Activities, as defined in the Executive Orders, access to the area was not prohibited.

Finally, Plaintiff's Complaint does not allege the existence of the fourth requirement, that the action of civil authority is taken in response to dangerous physical conditions that result from the property damage or continuation of the Covered Cause of Loss that caused the damage. The Executive Orders were not issued because of any lasting dangerous condition caused by property damage, such as a structurally unsound building following a partial collapse, as in *Manpower*. Rather, they were entered to prevent a future harm, i.e., the *future* transmission of the virus between people, much like the no-fly orders issued by the FAA following 9/11 that were entered due to the risk of *future* terrorist attacks. *See, e.g., United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128, 129 (2d Cir. 2006). Thus, for all of the reasons discussed above, Plaintiff's Complaint fails to state a claim for coverage under the Civil Authority additional coverage.

### IV. THE SOCIETY POLICY IS NOT AN "ALL-RISK" POLICY AND THE ABSENCE OF A VIRUS EXCLUSION DOES NOT CREATE COVERAGE

Plaintiff's assertion that the Society Policy covers all types of loss unless excluded because it is an "all-risk" policy is incorrect. The Society Policy does not use the term "all-risk" and is not

an "all risk" policy because the Society Policy only provides coverage for direct physical losses, not all losses or even all fortuitous losses. *See, e.g.*, *Bd. of Educ. of Maine Twp. High Sch. Dist. 207 v. Int'l Ins. Co.*, 292 Ill. App. 3d 14, 17, 684 N.E.2d 978 (Ill. App. Ct. 1997) (describing an "all risk" policy as one that provides coverage for all fortuitous losses not resulting from misconduct or fraud unless expressly excluded); 10A Couch on Ins. 3d § 148:50 (rev. 2019) (defining an "all-risk" policy as one where "recovery is allowed for fortuitous losses unless the loss is excluded by a specific policy provision"). Moreover, Plaintiffs are seeking coverage under additional coverage parts, Business Income and Civil Authority, which each provides their own limited coverage separate from the main insuring agreement and has their own specific terms and conditions that must be met for their coverage to apply. (Dkt. No. 32 at ¶ 17.) Consequently, the Society Policy is not an "all-risk" policy.

The absence of a virus exclusion in the Society Policy is irrelevant because the absence of an exclusion does not establish coverage. *See Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 779 (7th Cir. 2015)("A policy does not need to exclude from coverage liability that was not contemplated by the parties and not intended to be covered under their agreement."). The existence of coverage is an essential element of the Plaintiff's case, and it is only after an insured has brought himself within the terms of the policy that the existence or absence of an applicable exclusion becomes relevant. *Hays v. Country Mut. Ins. Co*, 28 Ill. 2d 601, 605-06 (1963). Because Plaintiff does not have a claim that falls within the terms of coverage, the presence or absence of any exclusions is inapposite.

## **CONCLUSION**

WHEREFORE, the Defendant, Society Insurance, respectfully requests that this Honorable Court enter an order dismissing Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6);

declaring there is no coverage for Plaintiff's claims under the Society Policy; and granting Society such other and further relief as this Court deems just.

Thomas B. Underwood (#3122933)
Michael D. Sanders (##6230187)
Michelle A. Miner (#6299524)
Amy E. Frantz (#6312526)
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
tbu@pw-law.com
msanders@pw-law.com
mminer@pw-law.com
afrantz@pw-law.com

Respectfully submitted,

Society Insurance

By:   /s/ Thomas B. Underwood
        Counsel for Defendant

17